## CENTRAL HANOVER BANK & TRUST CO. v. UNITED STATES.
### No. 169, Docket 20469.

Circuit Court of Appeals, Second Circuit.
July 24, 1947.

John F. X. McGohey, U. S. Atty., of New York City, (Samuel Rudykoff, Asst. U. S. Atty., of New York City, of counsel), for defendant-appellant.

Barr, Robbins & Palmer, of New York City (William G. Barr and John R. Conley, both of New York City, of counsel), for plaintiff-appellee.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The decedent, Harriette M. Arnold, died a resident of the City of New York leaving a will under which the plaintiff Central Hanover Bank and Trust Company became the executor. Prior to 1935 the decedent had acquired 6,490 shares of Electric Bond & Share Company at an aggregate cost of $426,976.01. No additional shares of that stock were acquired by said decedent in 1935 or 1936.

On or about February 2, 1925, plaintiff's testator received a dividend of 2,036 shares of Electric Bond & Share Securities Corp. stock in respect of 2,036 shares of common stock of General Electric Company. The cost allocated to said 2,036 shares of Electric Bond & Share Securities Corp. stock was $34,412.78. Thereafter in 1927 and 1928 said decedent acquired 2,410 additional shares of Electric Bond & Share Securities Corp. stock. On or about March 21, 1929, on a three for one non-taxable split on a reconsolidation with Electric

Bond and Share Co. said shares of decedent became 13,338 shares of Electric Bond and Share Co. stock having no par value. Thereafter, during 1929, 1930 and 1931 decedent acquired 4,999 additional shares of said stock of Electric Bond and Share Co. and therefore held 18,337 shares of that stock as of the end of 1931. Thereafter on March 22, 1932, on a split one for three on change in par value from no par to $5.00 par decedent's holdings of said stock became 6,112-200/600 shares and during 1932 were increased by purchases and stock dividends to 6,490 shares which decedent continued to hold until 1935. In 1935 the total number of shares of stock of Electric Bond and Share Co. owned by plaintiff's testator was 6,490. In 1935 plaintiff's testator sold 1,990 shares of stock of Electric Bond and Share Co. In 1935 the adjusted cost of said 1,990 shares was $21,830.30. In 1936 plaintiff's testator sold 4,500 shares of Electric Bond and Share Co. which was the balance of her holdings thereof.

Mrs. Arnold had reported the cost price of the 1990 shares in her income tax return for 1935—when she sold the 1990 shares—as $130,921.77, a figure arrived at by multiplying the average cost per share of the 6490 shares by 1990. That basis was erroneous, as the Commissioner subsequently determined in 1939 when he applied the first-in, first-out rule to the sale transaction; the correct basis was $21,830.30, and Mrs. Arnold paid a 1935 deficiency income tax of $2,226.70 in accordance with a consent decree entered by the Board of Tax Appeals on April 18, 1940. In reporting the cost price of the remaining 4500 shares sold in 1936, Mrs. Arnold again used the average cost standard, arriving at a basis of $296,054.24. The application of the first-in, first-out rule to this transaction would have resulted in a larger basis and a correspondingly larger loss on the sale of the 4500 shares, thereby reducing the decedent's net taxable gain from capital transactions and reducing her income tax to the extent of $7,797.12. On July 20, 1940, decedent filed a refund claim for $7,802.30 with respect to the 1936 income tax. This claim was filed more than three years after March 15, 1937 (the date of filing dece-

dent's income tax return for 1936) and more than two years after December 15, 1937 (the date of the last payment of tax for the year 1936 by decedent), but within two years of May 12, 1939, when a claim of $3,306.89 for deficiency income tax for the year 1936 was paid by Mrs. Arnold. The Commissioner found an over-assessment of $7,797.12, but ruled that the claim was barred by the statute of limitations to the extent of $4,490.23. The Commissioner made a refund to the extent of $3,306.89 because the claim for a refund had been filed within two years of the time when the deficiency of $3,306.86 was paid in respect of the 1936 income tax liability of the decedent. This item of deficiency in no way related to the transactions involved in the claim for a refund of the balance of the over-assessment of $7,797.12. Plaintiff brought suit against the United States under Title 28 U.S.C.A. § 41(20) to recover the sum of $4,490.23 and interest from March 15, 1937, on the ground that Section 3801 of the Internal Revenue Code, Title 26 U.S.C.A. Int.Rev.Code, § 3801, which permits adjustments to correct an error where correction would otherwise be prevented by the ordinary statute of limitations, was applicable. The District Court ruled in favor of the plaintiff and entered judgment against the United States for $4,490.23 with interest from December 15, 1937. The decision was based on the theory that Section 3801 removed the bar of the statute of limitations as to the $4,490.23 claimed by the plaintiff. That section, which was derived from Section 820 of the Revenue Act of 1938, so far as pertinent, reads as follows:

"§ 3801. Mitigation of effect of limitation and other provisions in income tax cases

\* \* \* \* \* \*

"(b) Circumstances of adjustment. When a determination under the income tax laws—

"(1) Requires the inclusion in gross income of an item which was erroneously included in the gross income of the taxpayer for another taxable year \* \* \*; or

\* \* \* \* \* \*

"(5) Determines the basis of property * * * for gain or loss on a sale or exchange, and in respect of any transaction upon 'which such basis depends there was an erroneous inclusion in or omission from the gross income of, or an erroneous recognition or nonrecognition of gain or loss to, the taxpayer or any person who acquired title to such property in such transaction and from whom mediately or immediately the taxpayer derived title subsequent to such transaction—and, on the date the determination becomes final, correction of the effect of the error is prevented by the operation (whether before, on, or after May 28, 1938) of any provision of the internal-revenue laws other than this section * * * then the effect of the error shall be corrected by an adjustment made under this section. Such adjustment shall be made only if there is adopted in the determination a position maintained by the Commissioner (in case the amount of the adjustment would be refunded or credited in the same manner as an overpayment under subsection (c) ) or by the taxpayer with respect to whom the dermination is made (in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under subsection (c) ), which position is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or non-recognition, as the case may be. * * * "

■ The plaintiff argues that under (b) (1) supra, the effect of the statute of limitations was mitigated because there was an erroneous inclusion in the cost basis of the taxpayer for the year 1935 of $109,091.47 due to valuing the 1990 shares sold at $130,921.77 (based on an averaging of the cost of all shares held by the decedent), instead of the reduced figure of $21,830.30, which would have resulted from computation of cost on the first-in, first-out basis. There plainly was no erroneous inclusion in the *gross income* of the taxpayer for the year 1935 of any item which by the Commissioner's determination was required to be included in the gross income of the taxpayer for another year. Indeed, there was no erroneous inclusion in the year 1935 of any item of gross income. There was only an erroneous value attributed to the stock which was sold in that year which instead of increasing the gross income realized through the sale of the securities in 1935 decreased it through an over-valuation of the basis. The situation to which (b) (1) was intended to apply, is illustrated by Example A [1] in Senate Report No. 1567, 75th Cong., 3d Sess., 20 Cum. Bull. 1939–1 Part 2, p. 814.

■ To obtain a mitigation of the statute of limitations and an adjustment under Section 3801 (b) (5) there must have been a determination of the basis of the 4500 shares for gain or loss on a sale or exchange and in respect of a transaction upon which such basis depended an erroneous recognition or nonrecognition of gain or loss to the taxpayer. There was a determination by the Commissioner in 1939 on the sale of 1990 shares in 1935 but the basis depended solely on a transaction in 1925 wherein the plaintiff's testatrix received the 1990 shares as well as 46 other shares as a stock dividend, and that was not a transaction in which there was a recognition or nonrecognition of gain or loss because no gain or loss could be recognized upon receipt of the stock dividend.[2] Such gain or loss could only be recognized if and when the stock should be sold. See 43 Stat. 256, 26 U.S.C.A. Int.Rev.Code, § 112(a). Accordingly the conditions of the act for the mitigation of the statute of limitations were not fulfilled. That the

---

[1] "A. Taxpayer A, who reports income on the cash basis, erroneously included in his return for 1933 an item of accrued rent, and upon audit the return was accepted as filed. In 1938, after the period of limitations on refund claims for 1933 had expired, the Commissioner discovered that A received this rent in 1934, and consequently asserted and, after decision of the Board of Tax Appeals upholding such assertion, collected a deficiency assessment for the latter year. To prevent A from being subjected to an unfair double tax burden on account of a single item of income, an adjustment would be made under the proposed legislation."

[2] 26 U.S.C.A. Int.Rev.Code, § 115(f) (1); Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570.

terms of Section 3801(b) (5) were to be construed literally is indicated by Senate Report No. 1567, 75th Cong., 3d Sess., 20 Cum. Bull. 1939–1 Part 2, pp. 779, 815. There the principle embodied in 26 U.S.C.A. Int. Rev.Code, § 3801(b) (5) was stated as follows: "Disputes as to the basis of property should not allow the taxpayer or the Commissioner to obtain an unfair tax advantage *by taking one position at the time of the acquisition of property and an inconsistent position at the time of its disposition.*" (Italics supplied.)

In giving an illustration of the applicability of § 3801(b) (5), the Senate Report indicates that the legislative draftsmen did not endeavor to mitigate the effect of the statute of limitations in a situation such as that presented by the case at bar: "C. In 1931 the taxpayer received securities of corporation A having a fair market value of $5,000 in exchange for securities of corporation B which cost him $12,000. The taxpayer treated the exchange as one in which gain or loss was not recognizable and upon audit the return was accepted as filed. He sold the A securities in 1937 for $15,000 and reported $3,000 gain. After the statute of limitations had run on refund claims for 1931, the Commissioner asserted a deficiency for 1937 on the ground that the loss realized on the exchange in 1931 was erroneously treated as nonrecognizable, and that the basis for gain or loss upon the sale was $5,000, resulting in a gain of $10,000. The taxpayer and the Commissioner then entered into a closing agreement for 1937 in which the taxpayer agreed to the Commissioner's determination. To prevent the inconsistent resort to the lower basis resulting in complete denial of a deduction for the loss sustained in 1931, an adjustment would be made under the proposed section." Senate Report No. 1567, cited above, p. 814.

The Commissioner's illustration of the proper interpretation of Section 3801(b) (5) likewise shows that subdivision (5) is inapplicable to the facts before us. Example (4) under T.D. 4856; Regulations 101, Article 820(b)-5; Title 26 Code of Federal Regulations, Cum.Supp., § 29.3801 (b)-5, is stated as follows: "In 1933 taxpayer received 100 shares of stock of the X Corporation having a fair market value of $5,000, in exchange for shares of stock in the Y Corporation which he had acquired at a cost of $12,000. In his return for 1933 the taxpayer treated the exchange as one in which gain or loss was not recognizable. The taxpayer sold 50 shares of the X Corporation stock in 1934 and in his return for that year treated such shares as having a $6,000 basis. In 1939 the taxpayer sells the remaining 50 shares of stock of the X Corporation for $7,500 and reports $1,500 gain in his return for 1939. After the expiration of the period of limitations on deficiency assessments and on refund claims for 1933 and 1934, the Commissioner asserts a deficiency for 1939 on the ground that the loss realized on the exchange in 1933 was erroneously treated as nonrecognizable, and that the basis for computing gain upon the sale in 1939 is $2,500, resulting in a gain of $5,000. The deficiency is sustained by the Tax Court in 1943. An adjustment is authorized with respect to the year 1933 as to the entire $7,000 loss realized on the exchange. *No adjustment is authorized with respect to the year 1934 as the basis for computing gain upon the sale of the 50 shares in 1939 does not depend upon the transaction in 1934.*" (Italics supplied.)

In American Foundation Co. v. Commissioner, 1943, 2 T.C. 502 the Tax Court dealt with a situation analogous to the present in which the Commissioner was denied mitigation in respect to the statute of limitations. In its income tax return for 1931 the taxpayer reported the sale of a mining property for cash and other considerations including 15,000 shares of stock of the purchasing corporation. It reported no gain from the inclusion in the purchase price of the shares, claiming statutory nonrecognition of such gain, apparently as being a step in corporate reorganization within the meaning of 26 U.S.C.A. Int.Rev.Code, § 112(g). The Commissioner ruled otherwise and determined a deficiency based on the inclusion of the shares in the sales price at their market value of $20 per share. The taxpayer paid the deficiency and brought suit in the District Court for a refund. That court, pursuant to mandate, rendered

a judgment for the taxpayer in 1941. The taxpayer sold some of the 15,000 shares in 1934, 1936 and 1937, and in reporting its gains thereon used as a cost basis the fair market value of the shares when received in 1931. The correct cost of the shares was $6.82232 per share. The court held that:

"* * * the determination of the District Court did not determine the basis of the shares for any purpose whatever. The question before the court was whether petitioner had a recognizable gain on the receipt of the shares in 1931. The determination had nothing to do with basis.

"Neither was the 'omission' from gross income in 1934, 1936, and 1937 'in respect of any transaction upon which such basis depends.' The basis depends upon the transaction in 1931. The omission was in respect of the sale of some of those shares in the 1934, 1936, and 1937 transactions.

"The facts here do not fit the requirements of the statute. Section 3801 contains specific provisions governing its application, and we can not extend those provisions by implication. Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211."

Moreover, Section 3801(d) limits the adjustment solely to the item involved in the determination in the following language: "* * * There shall then be ascertained the increase or decrease in the tax previously determined which results solely from the correct exclusion, inclusion, allowance, disallowance, recognition, or nonrecognition, of the item, inclusion, deduction, credit, gain, or loss, which was the subject of the error. The amount so ascertained (together with any amounts wrongfully collected, as additions to the tax or interest, as a result of such error) shall be the amount of the adjustment under this section."

Senate Report No. 1567 clearly foreshadowed the limitation by the following comment: "As indicated above, this section is predicated on the principle that correction is made only with respect to the item involved in the determination. The operation of the bar of statute of limitations is not affected with respect to any other item, even though such other item also had been erroneously treated in the same year. As to these items there has been no change of position, no double tax or double deduction, to call for the relief provided by this section."

The item involved in the erroneous determination of the basis of the 1990 shares sold in 1935 only concerns those particular shares and had nothing to do with the remaining 46 shares issued as a stock dividend along with the 1990 in the year 1925, and certainly not with the remainder of the 4500 shares purchased later. The item here involved is 4500 shares sold in 1936, which did not include the 1990 shares or any part thereof. Undoubtedly the 4500 shares here contested included the 46 shares which had a basis in common with that of the 1990 shares. They were a different item and the loss realized from their sale was realized at a different time and in respect to different shares.

How very strict is the rule in dealing with the tolling of the bar of the statute of limitations in revenue cases is shown not only by the legislative interpretations, the Treasury Regulations, and the decision of the Tax Court in American Foundation Co. v. Commissioner, 2 T.C. 502, where Section 3801(b) (1, 5) and (d) have been involved, but by the recent decision of the Supreme Court in Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 67 S.Ct. 271, 273, where recoupment of barred claims was denied. As Justice Jackson remarked in the foregoing decision: "As statutes of limitation are applied in the field of taxation, the taxpayer sometimes gets advantages and at other times the Government gets them. Both hardships to the taxpayers and losses to the revenues may be pointed out. They tempt the equity-minded judge to seek for ways of relief in individual cases." See to the same effect American Light & Traction Co. v. Harrison, 7 Cir., 142 F.2d 639, 643, 154 A.L.R. 1042.

For the foregoing reasons, the judgment of the District Court is reversed and the cause remanded with directions to dismiss the complaint.